JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 22-1831 JGB (SHKx) | Date | January 26, 2023 |
|---|---|---|---|
| Title | *Jolene Peters v. TA Operating LLC, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 15); (2) VACATING the January 30, 2023 Hearing; and (3) VACATING the February 6, 2023 Scheduling Conference (IN CHAMBERS)

Before the Court is a motion to remand filed by Plaintiff Jolene Sabrowsky Peters ("Plaintiff" or "Ms. Peters"). ("Motion," Dkt. No. 15.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the hearing set for January 30, 2023.

## I. BACKGROUND

On August 31, 2022, Plaintiff filed a putative class action complaint against Defendants TA Operating LLC ("TA"), TravelCenters of America Inc. and Does 1-10 (collectively, "Defendants") in the Superior Court of the State of California for the County of San Bernardino. ("Notice of Removal," Dkt. No. 1.) On October 14, 2022, Defendants removed the action pursuant to the Class Action Fairness Act ("CAFA"). (Id.) In support of the Notice of Removal, Defendants filed the declaration of Karen Kaminski ("Kaminski"). ("Kaminski Declaration," Dkt. No. 5.) The complaint alleges seven causes of action: (1) failure to pay minimum and straight time wages in violation of Cal. Lab. Code §§ 204, 1194, 1194.2 and 1197; (2) failure to pay overtime wages in violation of Cal. Lab. Code §§ 1194 and 1198; (3) failure to provide meal periods in violation of Cal. Lab. Code §§ 226.7 and 512; (4) failure to authorize and permit rest periods in violation of Cal. Lab. Code § 226.7; (5) failure to timely pay final wages at termination in violation of Cal. Lab. Code §§ 201-203; (6) failure to provide accurate itemized

wage statements in violation of Cal. Lab. Code § 226; and (7) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 et seq. ("Complaint," Dkt. No. 4 Ex. A.)

On November 14, 2022, Plaintiff filed the Motion. (Motion.) In support of the Motion, Plaintiff filed a Declaration of John G. Yslas ("Yslas Declaration," Dkt. No. 15-1) and evidentiary objections to evidence submitted in support of the Notice of Removal. ("Plaintiff's Evidentiary Objections," Dkt. No. 15-2). On December 19, 2022, Defendants opposed the Motion. ("Opposition," Dkt. No. 18.) In support of the Opposition, Defendants filed a Declaration of Eric J. Gitig. ("Gitig Declaration," Dkt. No. 18-1.) The same day, Defendants also filed a response to Plaintiff's Evidentiary Objections. ("Response to Plaintiff's Evidentiary Objections," Dkt. No. 19.) On December 23, 2022, Plaintiff replied. ("Reply," Dkt. No. 20.) In support of her Reply, Plaintiff filed a request for judicial notice. ("RJN," Dkt. No. 20-1.)

On January 6, 2023, the Court continued the hearing on the Motion from January 9, 2023 to January 23, 2023. (Dkt. No. 21.) On January 20, 2023, the Court continued the hearing on the Motion from January 23, 2023 to January 30, 2023. (Dkt. No. 22.)

## II.   FACTS

Ms. Peters worked for Defendants as an hourly-paid, non-exempt employee from approximately March 2018 to approximately September 2021. (Complaint ¶ 7.) Plaintiff brings the action on behalf of herself and certain current and former employees of Defendants. (Id. ¶ 2.) The proposed class is defined as follows:

> All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent.

(Id. ¶ 22.)

The Complaint alleges that, throughout Plaintiff's employment, Defendants failed to pay for all hours worked (including minimum, straight time, and overtime wages), failed to provide legally compliant meal periods, failed to authorize and permit Plaintiff to take rest periods, failed to timely pay all final wages to Plaintiff when Defendants terminated her employment, and failed to furnish accurate wage statements to Plaintiff. (Id. ¶ 14.) Plaintiff alleges that her "experience working for Defendants was typical and illustrative." (Id.)

Plaintiff alleges that "Defendants maintained a systematic, company-wide policy and practice of" failure to pay employees for all hours worked, including all minimum, straight time, and overtime; failure to provide employees with timely and duty-free meal periods; failure to maintain accurate records of all meal periods taken or missed; failure to pay an additional hour's pay for each workday a meal period violation occurred; failure to authorize and permit employees

to take timely and duty-free rest periods; failure to pay an additional hour's pay for each workday a rest period violation occurred; willfully failure to pay employees all minimum, straight time, overtime, meal period premium, and rest period premium within the statutorily required time period when employment terminates; and failure to provide employees with accurate, itemized wage statements. (Id. ¶ 4.)

### III. LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds,

then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

## IV.   DISCUSSION

As the parties are aware, this action involves nearly identical allegations as Phillip Daniels et al. v. Ta Operating LLC et al., C.D. Cal. Case No. EDCV 22-1634 JGB (SHKx). In both actions, a TA employee (or, in Daniels, two employees) filed a putative class action asserting parallel wage and hour claims in state court in August 2022; Defendants (represented by the same counsel) removed the action pursuant to CAFA; and Plaintiffs moved to remand. In Daniels, this Court granted a motion to remand, finding that TA failed to meet its burden to demonstrate the $5,000,000 jurisdictional threshold under CAFA. See Daniels, "Order Granting Motion to Remand," Dkt. No. 28. Notably, in both cases, Defendants' Counsel provided almost identical underlying assumptions, evidence and estimates of the amount in controversy (AIC) for each of Plaintiffs' claims: at least $825,000 for the overtime claim; $1,100,000 for the minimum wage claim; $550,000 each for the meal and rest period claims; $3,520,000 for the failure to pay timely final wages claim; and $933,333 for the wage statements claim. (See Opposition; Daniels, Order Granting Motion to Remand.) The only differences are that in Daniels, Defendants argued that $500,000 was in controversy regarding a failure to reimburse work expenses claim, a cause of action not brought here, and that the potential attorney's fees in Daniels were $1,114,583, whereas here they are purportedly $1,869,583. (See Opposition; Daniels, Order Granting Motion to Remand.) For reasons explained below, the Court's analysis of these arguments is largely the same, as is the result it reaches. Where the analysis differs, the Court so indicates.

Before turning to the amount in controversy regarding each of Plaintiff's causes of action, the Court addresses two initial matters: Plaintiff's RJN and the import of Mendoza v. OSI Indus., LLC, 2022 WL 4291327 (C.D. Cal. Sept. 16, 2022), another order of this Court regarding a motion to remand a CAFA case.

### A.  Judicial Notice

Plaintiff requests judicial notice of two documents:

1. Raul Frias-Estrada's class action complaint in Frias-Estrada v. Trek Retail Corp., et al., Superior Court for Contra Costa, Case No. C20-01916, filed on September 22, 2020 (RJN Ex. A); and
2. April 19, 2021 Order Granting Remand in Frias-Estrada v. Trek Retail Corp., et al., Northern District of California Case No. 20-cv-0747-RS (Apr. 19, 2021) (RJN Ex. B).

The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case. See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("court orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court GRANTS Plaintiff's RJN.

**B. Mendoza**

Defendants argue that Mendoza, 2022 WL 4291327 guides the analysis here because "the language used to describe Defendants' alleged violations in Plaintiff's Complaint is *identical* to the language used in the Mendoza complaint, which was filed earlier this year by *the same plaintiff's firm*." (Opposition at 7.) Plaintiff, like the Mendoza plaintiffs, allege that Defendants maintained a "systematic, company-wide policy and practice" that violated similar provisions of the California Labor Code. (See Mendoza, 2022 WL 4291327, at *5-6; Complaint ¶ 4.) In Defendants' view, because the Court relied upon this language in finding the assumptions that the Mendoza defendant made reasonable, and ultimately found that the amount in controversy exceeded the CAFA threshold, the same result must follow here. (See Opposition at 7.) Plaintiff argues that Mendoza is "an entirely different non-binding case" involving "different parties, facts, briefing, arguments and even different individual lawyers" and was also ("with the greatest and all due and genuine respect to this Court") wrongly decided. (Reply at 2.) In the Court's view, Mendoza was a close call that turned on the specific facts alleged therein. Moreover, as Plaintiff notes, there is considerable authority, including from the Ninth Circuit, that departs from some of the precedent the Court relied upon in Mendoza. Ultimately, it is unnecessary to decide whether this Court decided Mendoza correctly or not, as the factual context is distinguishable and the authorities on which the Court must rely here, including Daniels, are different.

In Mendoza, the Court observed that "courts have repeatedly held that assumptions of one hour of missed overtime per pay period are reasonable, based on a plaintiff's allegations of 'pattern and practice' violations." 2022 WL 4291327 at *4 (citing Mackall v. Healthsource Glob. Staffing, Inc., 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016) (collecting cases)). However, it noted that "Plaintiffs' allegation of a 'policy and practice implies greater frequency than an allegation of a pattern and practice, as policies tend to be uniformly applied." Id. (quoting Wheatley v. MasterBrand Cabinets, LLC, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019). Neither Mendoza nor Wheatley suggest that language regarding a "policy" necessarily requires an assumption of a higher violation rate than a "pattern"; indeed, Wheatley itself says that may "tend" to be the case. The other primary authority on which this Court relied in Mendoza, Mejia v. DHL Express (USA), Inc., 2015 WL 2452755 (C.D. Cal May 21, 2015), stated

this principle well: "It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." Id. at *4. Ultimately, this Court was persuaded that was exactly the situation the plaintiffs in Mendoza alleged, largely because the complaint was devoid of any limiting allegations. As the Court noted, the Mendoza plaintiffs "could have, but did not, make more specific allegations to narrow the scale or scope of this controversy." 2022 WL 4291327 at *5. Instead, they alleged something akin to a "uniformly adopted and maintained" policy applying to each and every member of the putative class at seemingly all times.

Here, the Court's reading of the Complaint indicates that, notwithstanding the "policy and practice" language, the claims Plaintiff brings are more limited than those alleged in Mendoza. While Plaintiff alleges that Defendants "maintained a policy and practice of not paying Plaintiff and the class for all hours worked," she states, a few sentences later, that "[s]ome of this unpaid work should have been paid at the overtime rate." (Complaint ¶ 15) (emphasis added). Plaintiff consistently alleges that the class allegations "predominate." (See, e.g., id. ¶¶ 26, 27.) The Complaint acknowledges that "Defendants have made it difficult to calculate the full extent of overtime compensation due to Plaintiff and the Class" because of a lack of adequate recordkeeping. (Id. ¶ 45.) In light of these allegations, the Court cannot adopt Defendants' narrow reading of the Complaint, which focuses on one phrase to the exclusion of its broader context.

Unlike the plaintiffs in Mendoza, here Plaintiff provides considerable authority contradicting Defendants' position. Ibarra, 775 F.3d 1193, the seminal Ninth Circuit case on CAFA's amount in controversy requirement, found little meaningful difference between a "policy" and "pattern" allegation. There, the Ninth Circuit found that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." Id. at 1198-99. Because the plaintiff alleged a "'pattern and practice' of law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise," the Ibarra court held that the defendant had the burden to demonstrate reasonable assumptions underpinning its estimated amount in controversy. Id. at 1199. The Ninth Circuit then strongly suggested, even if it did not expressly hold, that a "policy and practice" allegation would be roughly synonymous: "While it is true that the complaint alleges that Manheim maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift." Id. The Court infers that the plaintiff in Ibarra used these "pattern and practice" and "institutionalized unwritten policy" allegations interchangeably throughout his complaint; at no point in the opinion did the Ninth Circuit suggest anything turned on the difference.

Other persuasive authority supports Plaintiff's position. In Frias-Estrada v. Trek Retail Corp., 534 F. Supp. 3d 1058 (N.D. Cal. 2021), the court, Chief United States District Judge Richard Seeborg, remanded a similar wage and hour action, finding that the removing defendant failed to meet its burden to demonstrate the amount in controversy under CAFA. The Frias-

Estrada complaint alleged the identical language here: that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice" of California Labor Code violations. (RJN Ex. B.) The court rejected the argument that the defendant was entitled to assume a 100% violation rate and went on to find its more "conservative" assumptions, including a 20% violation rate for meal and rest period damages, "simply 'pulled from thin air' without any 'reasonable ground underlying them.'" Frias-Estrada, 534 F. Supp. 3d at 1065 (quoting Ibarra, 775 F.3d at 1199). Other courts have held that similar language of a "policy or practice" does not equate to an allegation of "universal violations" and cannot establish an 100% violation rate. See, e.g., Garza v. Brinderson Constructors, Inc., 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016).

The bottom line is this: in the run of cases, a "policy and practice" allegation likely "implies greater frequency than an allegation of a pattern and practice[.]" Wheatley, 2019 WL 688209, at *5. But there is no basis in precedent or reason to hold that every case must turn on a hyper-technical distinction concerning one word, and Mendoza does not provide otherwise. The calculation of the amount in controversy in any CAFA case is necessarily a fact-specific inquiry that weighs the unique allegations of a complaint and the evidence supplied by the parties. Where the complaint does not state the amount of damages sought, as is usually the case, the removing defendant bears the burden of demonstrating that the amount in controversy exceeds $5,000,000. See Ibarra, 775 F.3d at 1197. In the Court's view, the key question is rarely, if ever, whether a plaintiff used one word or another in her complaint, but rather whether the defendant meets its "burden to show that its estimated amount in controversy relied on reasonable assumptions." Id. at 1199. That question, in turn, generally does not rest on whether the defendant has picked a low enough number, as Defendants appear to argue in the Opposition, distinguishing cases remanding based on assumed 20% violation rates because here they claim to assume only a 5% rate. (See Opposition at 15.) As Plaintiff notes, "a speculative 5% violation rate is no more based on the required summary-judgment type evidence than the baseless assumption rates in other cases." (Reply at 6.) An 100% violation rate may be reasonable in some cases and a 1% violation rate unreasonable in others; what matters is the depth of the factual support provided by a defendant and the chain of reasoning it uses to reach its estimate. Courts in the Central District frequently hold that a defendant "may not rely on statistical assumptions to sustain the amount in controversy requirement" and "have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence." Salazar v. Johnson & Johnson Consumer Inc., 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) (collecting cases).

The Court already found the same assumptions Defendants make here unreasonable in Daniels. The Court's approach must be rooted in the reality of Defendants' real-world conduct, not a misguided search for magic words that one plaintiff's lawyer or another happened to use in a complaint, even if they intended the same thing. Indeed, even Defendants do not really appear to believe that the amount in controversy in the instant case meaningfully departs from that in Daniels because of disparate language in the respective complaints, as they read the same documents that the Court has and came up with *exactly the same* assumptions and estimates. As

set out in greater detail below, the Court finds Defendants' assumptions unreasonable for the same reasons it did in <u>Daniels</u> and remands accordingly.

## C. CAFA: Evidentiary Standard

Plaintiff moves to remand on the ground that Defendants failed to prove by a preponderance of the evidence that the amount in controversy ("AIC") for the class exceeds the $5,000,000 CAFA jurisdictional minimum. (Motion at 3.) Defendants argue that CAFA's AIC requirement is satisfied because the Complaint places over $9,347,916 in controversy, including attorney's fees. (Opposition at 29-30.)

### 1. Evidentiary Standard

As an initial matter, the parties dispute whether Defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. Defendants argue that because Plaintiff contested the amount in controversy through only a facial attack on Defendants' jurisdictional allegations, Defendants are only required to provide plausible allegations to support CAFA jurisdictional requirements. (<u>See</u> Opposition at 12-13.) The Court disagrees.

"A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." <u>Harris v. KM Indus., Inc.</u>, 980 F.3d 694, 699 (9th Cir. 2020) (internal quotations and brackets omitted) (quoting <u>Leite v. Crane Co.</u>, 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack "contests the truth of the . . . allegations" themselves. <u>Id.</u> (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." <u>Id.</u> (quoting <u>Ibarra</u>, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." <u>Harris</u>, 980 F.3d at 700 (citing <u>Ibarra</u>, 775 F.3d at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence")).

Defendants claim that Plaintiff makes only a facial challenge because she does not "suggest her claims are actually worth less than $5 million, nor does she submit any actual evidence challenging Defendants' reasonable assumptions or amount in controversy calculations." (Opposition at 13.) Not so. Plaintiff directly challenges the truth of each of Defendants' significant assumptions. (<u>See</u> Motion.) Although Plaintiff does not introduce evidence outside the pleadings, a factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." <u>Harris</u>, 980 F.3d at 700. Thus, Plaintiff make a factual attack. Defendants must support their jurisdictional allegations with competent proof under the same evidentiary standard applied at summary judgment.

### 2. Evidentiary Support

Here, because the Complaint does not state the amount of damages sought, Defendants must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). A defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

In calculating the AIC, Defendants rely on the declaration of Karen Kaminski, the Senior Vice President of Human Resources at TA, who "oversee[s] TA Operating's payroll department." (Kaminski Decl. ¶ 2.) Ms. Kaminski declares that she has "access to" and "reviewed payroll records for individuals who are or were employed by TA Operating as non-exempt employees in the state of California between August 5, 2018 and June 14, 2022, which were created, maintained, and kept by TA Operating in the regular and ordinary course of business." (Id. ¶ 4.) From this review, Ms. Kaminski estimates that TA "employed at least 5,000 non-exempt employees in the state of California who received biweekly wage statements between August 5, 2018, and June 14, 2022, of which approximately 2,000 have separated from their employment with TA Operating since August 5, 2019." (Id. ¶ 5.) Ms. Kaminski declares that "the non-exempt employees who were employed by TA Operating in the state of California collectively worked over 200,000 workweeks between August 5, 2018 and June 14, 2022." (Id. ¶ 6.) Ms. Kaminski further states "TA Operating employed over 2,000 non-exempt employees in the state of California who received biweekly wage statements between August 5, 2021 and June 14, 2022, and that these employees collectively received over 15,000 wage statements between August 5, 2021 and June 14, 2022." (Id. ¶ 7.)[1]

Plaintiff presents several objections to the Kaminski Declaration regarding her estimates about the number of non-exempt employees that TA employed, the number of workweeks the employees worked, how many employees have separated from their employment with TA since August 5, 2019, and the amount of wage statements that employees received. (See Plaintiff's Evidentiary Objections.) Plaintiff argues that Ms. Kaminski's estimates lack foundation, are hearsay, fail to authenticate, violate the best evidence rule, and are devoid of required preliminary facts and/or are improper factual conclusions because Defendants did not submit any records to support Ms. Kaminski's declaration. (See Plaintiff's Evidentiary Objections; Motion at 9-10.) The Court disagrees. Ms. Kaminski states that she is the Senior Vice President of Human

---

[1] The Court observes that, with the exception of one typo in the Kaminski Declaration submitted in Daniels that has been corrected here, the Kaminski Declarations are identical.

Resources at TA, she oversees TA's payroll department, and she has "access to and regularly review[s] payroll data and records" of TA's current and former employees that are "created, maintained, regularly updated and kept by TA in the regular and ordinary course of business." (Kaminski Decl. ¶ 2.)  That is sufficient to establish foundation.  See Torrez, 2017 WL 2713400, at *3 (finding that declaration provided an adequate foundation because the declarant specified his position in the company and stated that he has access to certain employee-related information, which he accesses through his regular course of business activities).

Plaintiff's hearsay, failure to authenticate, and best evidence rule objections are similarly unpersuasive.  The Kaminski Declaration does not reveal any "statement, other than one made by the declarant . . ., offered in evidence to prove the truth of the matter asserted."  Deleon v. Time Warner Cable LLC, 2010 WL 11515279, at *2 (C.D. Cal. Apr. 12, 2010) (internal citations omitted).  The Kaminski Declaration relies on Ms. Kaminski's personal knowledge learned from her position and her review of payroll records.  "To the extent that those [payroll] records contain hearsay statements, [Defendants] [have] established that the business records are 'records of regularly conducted activity,' which 'are not excluded by the hearsay rule.'"  Id. (quoting FRE 803(6).)  Furthermore, Ms. Kaminski is not testifying to the authenticity of an item of evidence, but to her personal knowledge.  As to Plaintiff's best evidence rule objection, courts have overruled such an objection because payroll contents may be proven without producing written receipts or books of account.  See Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *2 (C.D. Cal. Oct. 6, 2022) (overruling best evidence rule objection because payroll contents may be proven without producing written receipts or books of account); Jones v. Tween Brands, Inc., 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding that defendant was not required to provide the payroll data upon which its declarant relied upon).  Furthermore, Plaintiff does not argue that Defendants' "declarations and evidence would not be admissible under any circumstances at a trial, and the material does not present any insurmountable evidentiary obstacles."  Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *3 (C.D. Cal. Oct. 6, 2022).  Accordingly, the Court may consider the Kaminski Declaration.  Plaintiff's evidentiary objections are **OVERRULED**.

### 3. Jurisdictional Minimum

Defendants claim in the Notice of Removal that because (1) Plaintiff filed her Complaint as an "unlimited" jurisdiction civil case as reflected by Plaintiff designating the case as "Unlimited (Amount demanded exceeds $25,000)" on the civil case cover sheet, and (2) Plaintiff alleged in the Complaint that her claims are "typical of all [Putative Class Members]," it is plausible that Plaintiff is seeking at least $25,000 per putative class member, which places over $125,000,000 in controversy.  (Notice of Removal ¶ 26).  The Court doubts that Defendants actually believe in this argument because they do not raise it in the Opposition, but the Court considers, and rejects, it anyways.  (See Opposition.)

The "checked Unlimited box on the cover sheet merely indicates that the amount demanded exceeds $25,000."  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 886 (9th Cir. 2010) (internal quotations omitted.)  Nothing "in the cover sheet indicates that the amount

demanded *by each putative class member* exceeds $25,000." Id. (emphasis in original). Furthermore, Plaintiff has not alleged that she is seeking the jurisdictional minimum for every putative class member. (See Complaint.) Thus, Defendants fail to establish an AIC over $125,000,000. See Ryan v. Mission Treatment Servs., Inc., 2022 WL 4331093, at *4 (C.D. Cal. Sept. 19, 2022) (finding that defendant's AIC calculation based on damages per class member in the amount of $25,000, the minimum amount required for unlimited civil jurisdiction in California state court, is unsubstantiated because the plaintiff did not allege that each putative class member is seeking $25,000); cf. Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 688-89 (9th Cir. 2006) (permitting the jurisdictional-minimum assumption to support a showing of the amount in controversy where the plaintiff's complaint clearly alleged "the amount in controversy in compensatory damages for each plaintiff exceeds the minimum jurisdictional limits of this Court").

### 4. Overtime and Minimum Wages (Claim One and Two)

In calculating an estimated AIC, Defendants assume that Plaintiff and the putative class are seeking to recover an hour of overtime wages and an hour of minimum wage every four weeks, which amounts to $825,000[2] in controversy in connection with Plaintiff's overtime claim and $1,100,000[3] in controversy in connection with her minimum wage claim. (Notice of Removal ¶ 27; Opposition at 17.) Plaintiff argues that Defendants' calculations rely on unreasonable and arbitrary assumptions that there were regular overtime violations for every putative class member and that every class member worked off the clock regularly without any pay and was thus entitled to unpaid minimum wages. (Motion at 12.) Plaintiff observes that Defendants provide no explanation for why a purported average hourly rate of $11 is appropriate and do not "identify what documentary evidence supports the conclusion that the total number of workweeks at issue exceeds 200,000." (Id.) Plaintiff contends that Defendants' assumptions are arbitrary and unreasonable in concluding that every class member is entitled to 15 minutes of overtime wages per week, when they have submitted no evidence suggesting "that all putative class members worked more than 40 hours per week, worked an average of eight or more hours per day, or ever worked seven consecutive days." (Id.) In her view, Defendants' assumptions contradict the language of the Complaint, which alleges, among other things, that "some" of the "unpaid work should have been paid at the overtime rate." (Id. at 13) (quoting Complaint ¶ 15).

Defendants contend that their assumptions are reasonable given Plaintiff's use of the term "policy and practice" when describing alleged minimum wage and overtime violations. (Opposition at 18.) In support of this position, Defendants cite to a string of cases without explaining how they relate to their arguments. (See id.) The Court has little doubt that some courts have accepted a defendant's specific numerical assumption in a case in which the plaintiff alleged a policy, pattern and/or practice of illegal conduct. As it indicated above, the problem is

---

[2] "($16.50 overtime rate [$11.00 x 1.5] x 0.25 hours per week x 200,000 workweeks)." (Notice of Removal ¶ 27.)

[3] "($11.00 minimum wage rate x 0.25 hours per week x 200,000 workweeks, plus an equal amount in liquidated damages)." (Notice of Removal ¶ 27.)

not necessarily that Defendants picked a violation rate that is too high. The problem is that the Court cannot discern why it picked that number at all, because Defendants never adequately explain their chain of reasoning and certainly provide no real evidence in support of it. As far as the Court can tell, Defendants simply picked that violation rate because it might seem low enough to be facially "reasonable" and still high enough to keep them on track to hit their magic number of $5,000,000. This approach "amounts to little more than plucking a violation rate out of the air and calling it 'reasonable'—[] 'a wasteful and silly, but routine, exercise in mathematical fantasyland.'" Gonzalez v. Randstad Pros. US, LLC, 2022 WL 17081053, at *3 (C.D. Cal. Nov. 18, 2022) (citation omitted). "If one is going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or once per month." Cackin v. Ingersoll-Rand Indus. U.S., Inc., 2021 WL 2222217, at *3 (C.D. Cal. June 2, 2021). Defendants' purported 5% violation rate "does 'not take the place of evidence.'" Vanegas v. DHL Express (USA), Inc., 2021 WL 1139743, at *4 (C.D. Cal. Mar. 24, 2021) (citation omitted). The "calculation merely demonstrates how arbitrary [Defendants'] assumptions are: it shows how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." Id. (brackets and citation omitted). The Court agrees with Plaintiff that, in the Central District, "the true majority view is that with language like that which is at issue here, there is no basis for speculative rate assumptions even of 5% without supporting summary-judgment-type evidence." (Reply at 7) (citing Salazar, 2018 WL 4560683).

Defendants make a clever attempt to invert this reasoning by arguing that "Plaintiff fails to cite a case expressly holding a 5% violation rate is unreasonable, especially given Plaintiff's 'policy and practice' allegations." (Opposition at 19) (citing cases where courts have found that violation rates ranging from 20% to 100% are unreasonable).) That may very well be true, but it also entirely misses the point. As it has now explained at length, this Court does not find Defendants' assumption unreasonable simply because it is too low; it finds it unreasonable because is it "pulled from thin air." Ibarra, 775 F.3d at 1199. The cases the Court has cited above, and those cited by Plaintiff, hold the same. It is Defendants' "burden to show by a preponderance of the evidence" that a monthly violation rate is a reasonable assumption that supports its calculations, and it has failed to meet that burden by merely citing cases where some courts have found similar violation rates reasonable or higher violation rates to be unreasonable. The number of unpaid hours "is highly dependent on the facts and circumstances of each individual case," and "absent any case-specific allegations or evidence, the Court has no way of knowing whether any number of unpaid hours . . . is a reasonable assumption." Ryan v. Mission Treatment Servs., Inc., 2022 WL 4331093, at *3 (C.D. Cal. Sept. 19, 2022). Thus, without more, the Court is unpersuaded that Defendants have shown by a preponderance of the evidence that overtime and minimum wages violations occurred monthly.

The Court "will not propose a reasonable violation rate" for Plaintiff's overtime and minimum wage claims, as the Court "need only 'weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.'" Marquez v. Southwire Co., LLC, 2021 WL 2042727, at *5 (C.D. Cal. May 21, 2021) (quoting Harris v. KM Indus., Inc., 980

F.3d 694, 701 (9th Cir. 2020)). The Court finds that Defendants have not satisfied their burden by a preponderance of the evidence as to the amount in controversy with respect to Plaintiff's overtime and minimum wage claims.

To the extent Defendants thinks such reasoning is unfair, this Court, like many others in the Central District, agrees with an observation originally made by the Honorable George Wu:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

Toribio v. ITT Aerospace Controls LLC, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019); see also Gonzalez, 2022 WL 17081053, at *4 ("contin[uing] to agree" with this observation). The Toribio court acknowledged that district courts are "all-over-the-map in deciding how to handle, and whether to accept, the type of approach" Defendants advocate here. 2019 WL 4254935, at *3. In Judge Wu's view, "defendants in this type of litigation will either have to change their approach along the lines the Court has suggested above (take some discovery in the wealth of time CAFA affords to do so), the Ninth Circuit will have to reconsider Ibarra and tell district courts to accept whatever number a defendant can imagine, or the Supreme Court or (don't hold your breath) Congress will have to step in to clear up what has become a wasteful and silly, but routine, exercise in mathematical fantasyland." Id. This Court acknowledges that a different court in the Central District might have accepted the assumptions Defendants make here. But it also believes that the majority, and correct, view is to the contrary.

### 5. Meal and Rest Periods (Claims Three and Four)

Defendants assert that Plaintiff's meal period and rest break violations each place $550,000 in controversy, respectively. (Notice of Removal ¶¶ 27.c-d.) To reach this figure, Defendants assume one meal period and one rest period violation every four weeks for all class members.[4] (Id.) Defendants explain that their assumptions are conservative and reasonable

---

[4] Defendants contend that Plaintiff is seeking to recover "at least one meal period premium for every four weeks for all Putative Class Members, which would place over $550,000 in controversy in connection with her meal period claim ($11.00 hourly rate x 0.25 meal periods per week x 200,000 workweeks)." (Notice of Removal ¶ 27.c.) And that Plaintiff is seeking to recover "at least one rest period premium for every four weeks for all Putative Class Members, (continued . . . )

because the "Complaint seeks payment in connection with all forms of break-related violations (missed, delayed, interrupted or incomplete) and Plaintiff provides no alternative violation rate." (Opposition at 22.) Plaintiff counters that Defendants cannot assume that "every single class member experienced meal period violations *and* rest period violations *every single month*" without supplying "any evidence for why *any* meal period violations should be assumed to have occurred for every employee on a regular basis." (Motion at 14.)

The Court agrees with Plaintiff. Defendants' assumptions "lack factual support." Salazar, 2018 WL 4560683, at *3. "It would be just as consistent with the [C]omplaint to assume a frequency of . . . once-per-quarter" violations based on the Complaint's allegations. Duran v. Allegis Glob. Sols., Inc., 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021). Notably, Defendants' only evidence is the Kaminski Declaration, which provides an estimate of the total numbers of employees that TA employed, states that employees received biweekly wage statements, estimates the number of workweeks that employees worked in total, and estimates the number of employees that have separated from their employment with TA. (Kaminski Decl. ¶¶ 5-7.) Nothing in the Kaminski Declaration "purports to provide evidence that would assist the Court in making a reasonable assumption as to the applicable violation rate." Gonzalez v. H&M Hennes & Mauritz L.P., 2022 WL 179292, at *3 (C.D. Cal. Jan. 20, 2022). Thus, Defendants do "not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the [C]omplaint that might do so." Duran, 2021 WL 3281073, at *3. Essentially, Defendants only point to other cases where courts have accepted a monthly or more frequent violation rate for meal and rest periods, but they do not explain why the assumption of a monthly violation rate makes sense here. (See Opposition at 20-23.)

Accordingly, because "[Defendants] do[] not set forth any facts supporting [their] assumptions regarding the frequency of meal and rest period violations . . . the Court finds that [Defendants] ha[ve] failed to establish by the preponderance of the evidence the amount in controversy for these claims." Salazar, 2018 WL 4560683, at *3 (finding that defendant presented no facts supporting its violation rate and thus defendant did not establish by a preponderance of the evidence the AIC for plaintiffs' meal and rest break claims); see also Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) (unpublished) (affirming district court's decision that defendant's evidence was insufficient to support removal jurisdiction because defendant failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one missed rest period per paycheck or month).

### 6. Failure to Pay Timely Final Wages (Claim Five)

Defendants assert that Plaintiff's failure to pay timely final wages claim puts at least $3,520,000 in controversy. (Opposition at 23.) Based on the allegations in the Complaint, and the fact that Defendants estimate that "at least 2,000 Putative Class Members" have separated

---

which would place over $550,000 in controversy in connection with her rest period claim ($11.00 hourly rate x 0.25 rest periods per week x 200,000 workweeks)." (Id. ¶ 27.d.)

from their employment with TA, Defendants assume a 66.66% violation rate. (Notice of Removal ¶ 27.e.)  Defendants claim they would be entitled to assume an 100% violation rate, but "given that Plaintiff would only need to establish that each Putative Class Member was denied just one minute of minimum wage, one minute of overtime, one meal period penalty, or one rest period penalty during the limitations period, Defendants conservatively assumed that only two-thirds of the 2,000 separated employees were entitled to waiting time penalties."  (Opposition at 24.)

Among other, similar authorities, Defendants cite a decision by this Court where the Court found that it was reasonable for the defendant to assume a 100% violation rate for each terminated employee because the plaintiff alleged that the defendant engaged in a uniform policy and practice of wage abuse.  (Opposition at 24 (citing Byrd v. Masonite Corp., 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016).  Byrd, like the other cases Defendants cite, is inapposite.  There, the Court explained that "[b]ecause the Court [] found that it is reasonable to assume that all putative class members have not been paid all of their overtime and meal and rest break wages, it is reasonable to assume that all terminated employees of [the defendant] would have had those unpaid wages withheld after their employment ended and still not paid up to the maximum thirty-day period."  Byrd, 2016 WL 2593912, at *3 n. 5.  Here, the Court has not found that Defendants' assumptions about Plaintiff's overtime, meal, and rest break monthly violation rate concerning the putative class members are reasonable, and thus, Defendants have not established that it is reasonable to assume that 66.66% of all terminated employees would have wages withheld after their employment ended.  The Complaint never alleges that Defendants failed to pay every putative class member final wages.  It alleges that "Plaintiff's final paycheck did not include payment for all expenditures, minimum wages, straight time wages, overtime wages, meal period premium wages, and rest period premium wages owed to [her] by Defendants at the conclusion of her employment."  (Complaint ¶ 18.)  "On information and belief, Defendants' failure to timely pay Plaintiff's final wages when her employment ended was not a single, isolated incident, but was instead consistent with Defendants' policy and practice that applied to Plaintiff and the Class."  (Id.)  Plaintiff alleges that she and the class are entitled to recover Cal. Lab. Code § 203 penalty wages "up to thirty (30) days maximum[.]"  (Id. ¶ 60.)  The exact assumption that Defendants make here was rejected by the court in Vasserman v. Henry Mayo Newhall Mem'l Hosp., 65 F. Supp. 3d 932, 978 (C.D. Cal. 2014) based on identical language ("This allegation does not presume that each class member is entitled to recover penalties for a full thirty days. Rather, it states that class members are entitled to penalties for 'up to' thirty days.")  For the reasons stated above, the Court does not find that Defendants' arbitrary assumptions of a two-thirds violation rate and the thirty-day maximum wage penalty are reasonable simply based off "policy and practice" language.  See Duran, 2021 WL 3281073, at *3; Garibay, 539 F. App'x at 764 (rejecting defendant's assumptions regarding Cal. Lab. Code §§ 203, 226 and 226.7 penalties as unsupported).

Notably, neither party has submitted evidence to tip the analysis in either direction, and "[u]nder the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction."  Ibarra, 775 F.3d at 1199.  Accordingly, without more, the Court is unpersuaded that Defendants have shown by a

preponderance of the evidence that there is at least $3,520,000 in controversy for Plaintiff's failure to pay timely final wages claim.

### 7. Failure to Provide Accurate Wage Statements (Claim Six) and Attorney's Fees

The Court need not decide the AIC for Plaintiff's remaining claim at issue or the amount of attorney's fees at stake because even if the Court found that Defendants met their burden to show by a preponderance of the evidence that their calculations for the remaining claim and attorney's fees are reasonable, the AIC would total less than $5,000,000, which does not meet CAFA's jurisdictional threshold. As established above, Defendants' estimated overtime wages, minimum wages, meal period, and rest period calculations are unreasonable. As to the remaining claims, Defendants assert that Plaintiff's failure to provide accurate wage statements claim puts at least $933,333 in controversy. (Notice of Removal ¶ 27.f; Opposition at 26.) Defendants do not provide any estimate for Plaintiff's final cause of action, unfair business practices, so it is not at issue here. (See Notice of Removal; Opposition.) Defendants estimate that Plaintiff will recover a 25% attorney's fee of $1,869,583. (Notice of Removal ¶¶ 28-30; Opposition at 28.) Thus, even if the Court accepted Defendants' estimates, the total estimate for the remaining claims and attorney's fees is $2,802,916, well below the jurisdictional threshold. Accordingly, the Court finds that Defendants failed to meet their burden to establish that the amount in controversy meets the threshold for CAFA jurisdiction.

### V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion. The January 30, 2023 hearing is **VACATED**. The scheduling conference set for February 6, 2023 is **VACATED**. The case is **REMANDED** to the Superior Court of California for the County of San Bernardino. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**